IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT, MARYLAND DIVISION

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2014 NOV 20  AM 9: 33
CLERK'S OFFICE
AT GREENBELT
BY  BV      DEPUTY

| | |
|---|---|
| ANGELA J. BRAY<br>3050 Orleans Avenue<br>Niagara Falls, NY 14303<br><br>   Plaintiff,<br><br>v.<br><br>MARRIOTT INTERNATIONAL d/b/a<br>SPRINGHILL SUITES<br>10400 Fernwood Road<br>Bethesda, MD 20817<br><br>Serve on:<br>   MARRIOTT INTERNATIONAL<br>   C/O REGISTERED AGENT<br>   3411 Silverside Road #104<br>   Rodney Building<br>   Wilmington, DE 19810<br><br>HOST MARRIOTT CORPORATION d/b/a<br>SPRINGHILL SUITES<br>11 East Chase Street<br>Baltimore, MD 21202<br><br>Serve on:<br>   The Prentice-Hall Corporation<br>   11 East Chase Street<br>   Baltimore, MD 21202<br><br>   Defendants. | PWG 14 CV 3645<br><br>C. A. NO.: _____<br>JURY TRIAL DEMAND |

## COMPLAINT

COMES NOW Plaintiff Angela J. Bray, by and through undersigned counsel and for her Complaint, states as follows:

1

## JURISDICTION AND VENUE

1. This court has original jurisdiction over the matter complained of herein pursuant to 28 U.S.C. § 1332.

2. This Court has personal jurisdiction over the Defendants because the Defendants have continuous and significant contacts with the State of Maryland and Defendants do business in the State of Maryland. Venue is therefore proper within the State of Maryland.

## PARTIES

3. Plaintiff **Angela Bray** is a disabled female who ambulates by wheelchair and resides in Niagara Falls, NY. Mrs. Bray was a guest at Defendants' SpringHill Suites in Gaithersburg, Maryland on November 25, 2011 when she slipped and fell in Defendants' non ADA compliant roll-in shower and fractured her cervical spine and sustained other injuries.

4. Defendant **Marriott International, Inc. ("Marriott")** is a for profit Delaware corporation with headquarters in Bethesda, Maryland that conducts business as a hospitality company in the State of Maryland and throughout the world through its branded, managed and/or franchised hotels, including the SpringHill Suites in Gaithersburg, Maryland ("SpringHill Suites").

5. Defendant **Host Marriott Corporation ("Marriott")** is a subsidiary company of Marriott which, upon information and belief, owns, manages or is a franchisee owner of the SpringHill Suites property in which Plaintiff slipped and fell and fractured her cervical spine.

## FACTUAL BACKGROUND

6. Mrs. Angela Bray is a 34 year old disabled female who is confined to and ambulates by wheelchair.

7. Mrs. Bray was born with lower extremity bone and joint deformities (including scoliosis) which were exacerbated by juvenile-onset poly-osteoarthritis.

8. Mrs. Bray was later diagnosed with juvenile-onset glaucoma (a rare eye disease in children) rheumatoid arthritis and fibromyalgia.

9. Since birth, Mrs. Bray has had 12 surgeries to correct her bone deformities leading to her being confined to a wheel chair.

10. Mrs. Bray has used a manual wheelchair since the age of fourteen (14). Since then, Mrs. Bray has relied heavily on her arms, shoulders, back, neck and all of her upper body strength to propel her wheelchair and to navigate her environment.

## Mrs. Bray's Holiday Travels November 2011

11. In an around November 2011, Mrs. Bray made plans to visit her family in Maryland for the thanksgiving holidays.

12. Mrs. Bray decided to make reservations with SpringHill Suites Hotel in Gaithersburg, Maryland.

13. Mrs. Bray chose SpringHill Suites because it advertised and represented that it provided rooming with mobility and roll-in shower accessibility.

14. In reliance upon SpringHill Suites' advertisements and representations, Mrs. Bray stayed in one of SpringHill Suites' accessible rooms.

15. On the evening of November 25, 2011, Mrs. Bray wheeled herself into the roll-in shower in order to shower.

16. ADA compliant roll-in showers are required to have shower seats installed and secured into the wall so that the shower seats are secure and stable when disabled individuals transfer themselves in and out of their wheelchairs to shower.

17. However, the SpringHill Suites roll-in shower in which Mrs. Bray showered did not have an ADA compliant shower seat. The roll-in shower in which Mrs. Bray showered had a non-compliant ADA, unsecured, stand alone shower seat. *See* Exhibit 1.

18. After she finished showering, Mrs. Bray then prepared to transfer herself from the shower seat back to her wheelchair.

19. As she was doing so, the shower seat began to slide backwards out from under her.

20. Mrs. Bray cannot use her legs to brace herself from a fall. As the shower seat slid from under her, she frightened. She reached for the grab bar on the wall.

21. The grab bar was loose and shaky-causing more instability and fear. She then reached for her wheelchair.

22. The wheelchair slid and Mrs. Bray fell. She crashed down and struck the left side of her head and neck against her wheelchair seat. Her neck snapped sideways as she crashed on her left shoulder and left buttock.

23. As a result of the fall, Mrs. Bray injured her neck, back, left shoulder, left buttock and knees.

24. Mrs. Bray went to Urgent Care in Maryland that night and was diagnosed with a neck strain, and was prescribed flexeril.

25. On December 2, 2011, and after she returned home, she visited the Emergency Department at the Niagara Falls Memorial Medical Center and was diagnosed with a neck and shoulder strain.

26. Mrs. Bray continued to suffer pain in her neck, back and shoulders. She also sustained a subcutaneous bruise and nodule on her left buttock.

27. On December 7, 2011, she visited an Internist, who diagnosed her with neck strain/sprain and with shoulder and back pain. The Internist ordered Mrs. Bray to continue taking her pain medications and referred her to a physical therapist for her pain.

28. Mrs. Bray had posterior neck pain which radiated into her arms all the way to her hands. She rated her pain at 9/10 on the scale of 1 to 10, with 10 being the most painful. Mrs. Bray's pain was constant in nature.

29. Her pain got worse with changes in the weather and movement of her upper extremities, especially when propelling her wheelchair.

30. Mrs. Bray experienced numbness and tingling in both her hands, affecting all five digits. She experienced weakness in both of her arms and she had difficulty when propelling herself in her wheelchair.

31. She also experienced migraine headaches which were aggravated and worsened by the neck injury.

32. Despite various forms of therapy and pain management, Mrs. Bray's pain got worse and went unresolved.

33. First, Mrs. Bray underwent a course of physical therapy from December to May 2012 without relief of her pain.

5

34. From May to November 2012, she underwent pain management including cervical traction, trigger point injections and nerve blocks.

35. This course of pain management still did not resolve the constant neck pain, headaches and tingling numbness she experienced.

36. On November 1, 2012, Mrs. Bray underwent a cervical spine MRI which found a large right-sided C6-7 disc herniation causing bilateral foraminal stenosis.

37. The MRI also noted a fracture of her C7 disc. A CT scan was also conducted to further evaluate the fracture found in C7.

38. The CT scan confirmed an avulsion fracture off the posterior aspect of her C7 vertebral body.

39. Upon this finding, it was resolved that Mrs. Bray needed an anterior cervical discectomy and fusion surgery to relieve her neck pain, the headaches and the other symptoms relating to the spinal and nerve pressure caused by the injury.

40. On December 3, 2012, Mrs. Bray had the cervical discectomy and fusion surgery. Her operation was an anterior cervical microdiscectomy and fusion with cage and plate C6-7 with a local bone marrow graft.

41. As a result of Defendant Marriott's per se negligence in failing to provide ADA compliant hotel accommodations, Mrs. Bray sustained a fractured cervical spine, suffered severe bodily pain and required significant and substantial spine surgery to relieve the pain.

42. As a result of Defendant Marriott's per se negligence, Mrs. Bray has accumulated very costly medical bills.

43. Mrs. Bray has also suffered loss of enjoyment of life, range of motion, reduced life expectancy, emotional distress and has sustained numerous other damages as a result of Defendant Marriott's per se negligence.

### Defendant Marriott's Negligence Per Se

44. According to the 1991 ADA Standards for Accessible Design ("1991 Standards"), roll-in showers are to be equipped with attached or secured shower chairs:

> **4.21.3 Seat.** A seat shall be provided in shower stalls 36 in by 36 in (915 mm by 915 mm) and shall be as shown in Fig. 36. The seat shall be mounted 17 in to 19 in (430 mm to 485 mm) from the bathroom floor and shall extend the full depth of the stall. In a 36 in by 36 in (915 mm by 915 mm) shower stall, the seat shall be on the wall opposite the controls. *Where a fixed seat is provided in a 30 in by 60 in minimum (760 mm by 1525 mm) shower stall, it shall be a folding type and shall be mounted on the wall adjacent to the controls as shown in Fig. 57.* The structural strength of seats and their attachments shall comply with 4.26.3.



Fig. 36
Shower Seat Design

45. In the 2010 ADA Standards for Accessible Design ("2010 Standards"), shower seats are also required to be installed and secured to the wall.

> **610.3 Shower Compartment Seats.** Where a seat is provided in a standard roll-in shower compartment, it shall be a folding type, shall be installed on the side wall adjacent to the controls, and shall extend from the back wall to a point within 3 inches (75 mm) of the compartment entry. Where a seat is provided in an alternate roll-in type shower compartment, it shall be a folding type, shall be installed on the front wall opposite the back wall, and shall

extend from the adjacent side wall to a point within 3 inches (75 mm) of the compartment entry. In transfer-type showers, the seat shall extend from the back wall to a point within 3 inches (75 mm) of the compartment entry. The top of the seat shall be 17 inches (430 mm) minimum and 19 inches (485 mm) maximum above the bathroom finish floor. Seats shall comply with 610.3.1 or 610.3.2.

**610.3.1 Rectangular Seats.** The rear edge of a rectangular seat shall be 2½ inches (64 mm) maximum and the front edge 15 inches (380 mm) minimum and 16 inches (405 mm) maximum from the seat wall. The side edge of the seat shall be 1½ inches (38 mm) maximum from the adjacent wall.



**610.3.2 L-Shaped Seats.** The rear edge of an L-shaped seat shall be 2½ inches (64 mm) maximum and the front edge 15 inches (380 mm) minimum and 16 inches (405 mm) maximum from the seat wall. The rear edge of the "L" portion of the seat shall be 1½ inches (38 mm) maximum from the wall and the front edge shall be 14 inches (355 mm) minimum and 15 inches (380 mm) maximum from the wall. The end of the "L" shall be 22 inches (560 mm) minimum and 23 inches maximum (585 mm) from the main seat wall.



46. Upon information and belief, the SpringHill Suites hotel was constructed after the 1991 Standards became effective but before the effective date of the 2010 Standards. Hence, Defendants were required to construct the roll-in shower, in which Ms. Bray fell, in compliance with the 1991 ADA Standards.

47. Rather than construct the roll-in shower with an ADA compliant shower seat installed and secured to the wall, Defendants placed a non-ADA compliant, unsecured stand alone shower seat in the roll-in shower. *See* Exhibit 1.

48. The SpringHill Suites roll-in shower, in which Mrs. Bray fell, did not have any ADA compliant shower seats secured to the wall. *See id.*

49. The secured shower seats required under the 1991 and 2010 Standards are specifically designed to provide disabled individuals with ease and safety when transferring themselves to and from their wheelchairs in roll-in showers.

50. The 1991 and 2010 Standards require that the shower seats be installed and secured to the wall so that shower seats do not slide out from under disabled individuals while transferring themselves to and from their wheelchairs in roll-in showers.

51. The 1991 and 2010 Standards require that the shower seats be installed and secured to the wall in order to prevent the type of accident that Mrs. Bray suffered.

52. The unsecured, stand alone shower seat that Defendants placed in the roll-in shower during Mrs. Bray's stay on November 25, 2011 was not secured to the wall as required by ADA Standards.

53. Defendant Marriott's failure to install a shower seat in compliance with the 1991 and/or 2010 ADA Standards constitutes negligence per se and was the proximate cause of Mrs.

Bray's fall, her cervical fracture, her pain and suffering and her subsequent cervical spine fusion and bone marrow graft surgery.

54. Mrs. Bray continues to suffer extreme pain and suffering, loss of range of motion and loss of quality of life and other damages as a result of Defendant Marriott's negligence.

## COUNT I
## NEGLIGENCE/NEGLIGENCE PER SE

55. Plaintiffs incorporate by reference allegations in paragraphs 1 - 54 of the Complaint as if fully stated herein.

56. At all times relevant herein, Defendant Marriott knew that the 1991 and/or 2010 Americans with Disabilities Standards for Accessible Design (the "1991 Standards" and/or "2010 Standards") were in effect in the United States and specifically within the State of Maryland at the time that Mrs. Bray reserved and stayed in the SpringHill Suites of Gaithersburg, Maryland in and around November 2011.

57. Standards for Accessible Design, from the Department of Justice's 1991 title III ADA regulation were published July 26, 1991. The 1991 Standards were in effect for new construction and alterations until March 14, 2012. The Department's 2010 Standards were published September 15, 2010 and became effective on March 15, 2012.

58. The 1991 Standards and/or 2010 Standards establish the applicable standard of care which Defendant Marriott was required to meet in providing accessible accommodations to Mrs. Bray and other disabled individuals in and around November 25, 2011.

10

59. Specifically, the 1991 and 2010 Standards establish that Defendant Marriott was required to construct and maintain roll-in showers with shower seats attached and secured to the wall compliant with Section 4.21 of the 1991 Standards and Section 610 of the 2010 Standards.

60. Defendant Marriott violated the ADA by failing to provide accessible accommodations, at the SpringHill Suites of Gaithersburg, Maryland in and around November 25, 2011, in compliance with Sections 4.21 and 610 and other sections of the applicable ADA Standards.

61. The ADA Standards were enacted to protect disabled individuals like Mrs. Bray and to prevent the type of accident that Mrs. Bray sustained in Defendants' non-ADA compliant roll-in shower.

62. Defendant Marriott's violation of the ADA Standards and breach of the applicable standard of care established therein is inexcusable and constitutes negligence per se.

63. As a direct and proximate result of the acts and omissions of Defendant Marriott, Mrs. Bray has suffered and continues to suffer bodily injury, loss of enjoyment of life, loss of range of motion, permanent scars, reduced life expectancy, emotional distress, lost wages, medical expenses and other damages.

WHEREFORE, Plaintiff Angela Bray demands judgment against the Defendants jointly and severally as follows:

A. Compensatory damages to Plaintiff Angela Bray in an amount in excess of Two Million Dollars ($2,000,000); and

B. Consequential damages to Plaintiff Angela Bray in an amount in excess of Five Hundred Thousand Dollars ($500,000); and

C. Such other relief as this court deems necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

        Respectfully submitted,

        **RICHARD F. SILBER, PLLC**

        */s/ Richard F. Silber*
        Richard F. Silber, Esquire
        3221 M Street, NW
        Washington, DC  20007
        202-338-0687 (office)
        202-333-0858 (fax)

        BOND LAW, PLLC

By: */s/ Johnnie D. Bond, Jr.*
        Johnnie D. Bond, Jr. (Bar# 022444)
        (*Admission Pending/To Be Admitted Pro Hac Vice*)
        1100 H Street, NW, Suite 315
        Washington, D.C. 20005
        Telephone: (202) 425-8472
        Telephone: (202) 587-2731
        Facsimile: (202) 487-2252
        jbond@bondpllc.com