**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **ANGELA J. BRAY,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.:  PWG-14-3645 |
| **MARRIOTT INTERNATIONAL,**  d/b/a **SPRINGHILL SUITES,** *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION AND ORDER**

While a guest at SpringHill Suites, Plaintiff Angela Bray (who is wheelchair bound) fell and sustained significant injuries when she tried to transfer herself from the hotel's shower seat to her wheelchair.  Compl. ¶¶ 3, 17–23, ECF No. 1.  She sues Defendants Marriott International, Inc. and Host Marriott Corporation (together, "Marriott"), as the owners of SpringHill Suites, for "Negligence/Negligence Per Se," claiming that the "non ADA[1] compliant" hotel shower did not comply with the 1991 and/or 2010 Americans with Disabilities Standards for Accessible Design ("1991 Standards" and "2010 Standards," and together, "ADA Standards").  *Id.* ¶ 58.  Marriott moves to dismiss, ECF No. 14, and the parties have fully briefed the motion, ECF Nos. 14-1, 20, 22.  A hearing is not necessary.  *See* Loc. R. 105.6.  Because Bray has stated a claim for negligence under Maryland law,[2] I will deny Marriott's motion.

---

[1] The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 – 12213.

[2] The parties agree that Maryland law applies.  *See* Defs.' Mem. 3; Pl.'s Opp'n 9.

**Factual Background**

While a guest at the hotel, Bray showered in SpringHill Suites's roll-in shower, using its "unsecured, stand alone shower seat." Compl. ¶ 17. When she finished showering and tried to return to her wheelchair, "the shower seat began to slide backwards out from under her." *Id.* ¶¶ 18–19. She reached for the "grab bar," only to discover that it "was loose and shaky." *Id.* ¶¶ 20–21. Frightened, she reached instead for her wheelchair, which slid, and she fell, fracturing her cervical spine and injuring her shoulder, buttock, and knees. *Id.* ¶¶ 3, 21–23. According to Bray, Marriott was negligent in "failing to provide accessible accommodations," in violation of the ADA and the ADA Standards. *Id.* ¶¶ 60, 62.

**Standard of Review**

Dismissal is appropriate where a complaint "fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (citing Fed. R. Civ. P. 12(b)(6)). This means that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *see Velencia*, 2012 WL 6562764, at *4. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Discussion**

In Marriott's view, although Bray styles her one cause of action as "Negligence/Negligence Per Se," it really is a claim for money damages under Title III of the

ADA. Defs.' Mem. 4. Marriott argues for dismissal on the basis that money damages are not available to private parties under the statute, which only provides for injunctive relief. *Id.* at 5. Marriott is correct that "it is well established that Title III does not create a private cause of action for money damages." *Estate of Saylor v. Regal Cinemas, Inc.*, 54 F. Supp. 3d 409, 429–30 (D. Md. 2014) (citing *Goodwin v. C.N.J., Inc.,* 436 F.3d 44, 50 (1st Cir. 2006) (collecting cases)). But, Bray asserts that her claim is, indeed, a claim for negligence, and not for money damages under Title III of the ADA. Pl.'s Opp'n 1–2. Specifically, Bray bases her claim on Marriott's alleged "violation of the public safety regulations promulgated under the ADA, the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities, 28 CFR Part 36 ('ADAAG' a/k/a '1991/2010 ADA Standards')," which she insists "serves as evidence of negligence." *Id.*

Marriott argues that, as a negligence claim, Bray's cause of action fares no better because "Maryland does not recognize negligence per se," Defs.' Reply 3, and "common law claims cannot be based on statutorily prohibited conduct; rather, they must be predicated on conduct prohibited under common law," *id.* at 7. It is true that "while '[t]he majority of state courts treat the violation [of a statutory standard] as negligence per se . . . Maryland is among the minority of states that treat the violation simply as evidence of negligence.'" *Rivers v. Hagner Mgmt. Corp.*, 959 A.2d 110, 123 (Md. Ct. Spec. App. 2008) (quoting *Joseph v. Bozzuto Mgmt. Co.*, 918 A.2d 1230, 1243 (Md. Ct. Spec. App. 2007)). Consequently, there is no cause of action for negligence per se under Maryland law, and to the extent Bray alleges one, it is dismissed. *See id.*; *Joseph*, 918 A.2d at 1243.

Yet, the Maryland Court of Special Appeals "reject[ed] the premise that where a plaintiff pursues a negligence action alleging a violation of a statutory or regulatory duty, the plaintiff

3

must first demonstrate the existence of a common law duty." *Paul v. Blackburn Ltd. P'ship*, 63 A.3d 1107, 1134 (Md. Ct. Spec. App. 2013), *aff'd*, 90 A.3d 464, 468 (Md. 2014). And, as Marriott acknowledges, "[i]n Maryland, 'the breach of a statutory duty may be considered some evidence of negligence.'" Defs.' Mem. 13 (quoting *Pahanish v. W. Trails, Inc.*, 517 A.2d 1122, 1132 (Md. Ct. Spec. App. 1986)). Indeed, it is well established that a statutory violation can be *prima facie* evidence of negligence that "'is itself sufficient to prove such a breach of duty as will sustain a private action for negligence.'" *Rivers*, 959 A.2d at 122 (quoting *Flaccomio v. Eysink*, 100 A. 510, 515 (Md. 1916)). The statutory violation, in itself, does not establish liability; liability only arises if the violation is the proximate cause of the plaintiff's injuries. *Brooks v. Lewin Realty III, Inc.*, 835 A.2d 616, 621–22 (Md. 2003). Therefore, Bray may allege, as she has, that a safety statute establishes Marriott's duty to her. *See Rivers*, 959 A.2d at 122.

To state a claim for negligence based on a statutory violation, Bray must allege "'(a) the violation of a statute or ordinance designed to protect a specific class of persons which includes the plaintiff, and (b) that the violation proximately caused the injury complained of.'" *Rivers*, 959 A.2d at 122 (quoting *Brooks*, 835 A.2d at 621). "The statute must 'set forth mandatory acts clearly for the protection of a *particular class* of persons rather than the public as a whole.'" *Chevron U.S.A. Inc. v. Apex Oil Co.*, No. JFM-15-00341, --- F. Supp. 3d ----, 2015 WL 6408191, at *10 (D. Md. Oct. 20, 2015) (finding that "[n]one of the statutes on which Chevron relies, however, purport to protect a particular class of persons, but rather the public and the environment as a whole") (quoting *Remsburg v. Montgomery,* 831 A.2d 18, 27 (Md. 2003) (quotation and citation omitted)). To establish proximate cause, Bray must demonstrate that (1) she is "'is within the class of persons sought to be protected,'" and (2) "'the harm suffered is of a kind which the drafters intended the statute to prevent.'" *Rivers*, 959 A.2d at 122 (quoting *Brown*

*v. Dermer*, 744 A.2d 47, 55 (Md. 2000), *overruled on other grounds by Brooks*, 835 A.2d at 617). "'It is the existence of this cause and effect relationship that makes the violation of a statute *prima facie* evidence of negligence.'" *Id.* (quoting *Brown*, 744 A.2d at 55).

Bray alleges that Marriott violated the ADA and, more specifically, ADA Standards for safety, because the hotel shower had an "unsecured, stand alone shower seat," and "[t]he grab bar was loose and shaky." Compl. ¶¶ 17, 21, 60, 62. She also alleges that Marriott's purported violation proximately caused her injuries. *Id.* ¶¶ 53, 63. Marriott concedes that the ADA protects a specific class—"disabled persons." Defs.' Mem. 14. And, Marriott also concedes that Bray is "a disabled female." *See* Defs.' Mem. 1. What Marriott challenges is whether Bray's injuries are the type that "'the drafters intended the statute to prevent.'" *See Rivers*, 959 A.2d at 122 (quoting *Brown*, 744 A.2d at 55); *Chevron*, 2015 WL 6408191, at *10; *see* Defs.' Mem. 14. As Marriott sees it,

> Title III of the ADA prohibits discrimination of disabled persons in public accommodations. 42 U.S.C.A. § 12182. . . . Thus the harm Title III is seeking to prevent is discrimination, not negligence. Furthermore, the ADA standards Plaintiff relies on in her complaint are entitled "Americans with Disabilities Act Accessibility Guidelines" (ADAAGs) [ADA Standards]. The title alone shows that the goal of the standards is to provide access for disabled persons. The ADAAGs were meant to prevent the harm of some public accommodation not being accessible.

Defs.' Mem. 14; *see also id.* at 4 ("Plaintiff's Complaint is premised on the alleged violation by the Defendants of an ADA provision pertaining to public accommodations."). Marriott relies on *Estate of Saylor*, 54 F. Supp. 3d 409 (D. Md. 2014), to support its argument that Bray cannot claim negligence based on a breach of the ADA because, for a breach of a statute to be evidence of negligence, the statute typically must pertain to public safety or health, whereas the ADA is an anti-discrimination statute. Defs.' Mem. 13–14.

5

Bray agrees that the ADA's purpose is to prevent discrimination, but counters that there is a "stark distinction between the public safety purposes of the ADAAG [ADA Standards] and the discrimination prevention/accessibility purpose of the ADA." Pl.'s Opp'n 2. According to Bray, the *Saylor* Court identified and distinguished other authority that "recognized the viability of a negligence claim" such as hers that is "premised on a defendant's failure to comply with certain ADAAGs [ADA Standards]." *Id.* at 12. She asserts that the ADA Standards "encompass and incorporate" the American National Standards "public safety objectives," which "actually preceded and gave birth to the discrimination prevention/accessibility objectives encompassed in the ADA statute." *Id.* at 3–4. Bray quotes various provisions of the ADA Standards, which in her view "unquestionably reflect[] that the Standards were designed for public safety and, more specifically, to prevent the exact type of harm that Plaintiff suffered":

- "[I]n-tub . . . . [s]eats shall be mounted securely and shall not slip during use."
- "Shower stalls [of specified dimensions] provide additional safety to people who have difficulty maintaining balance . . . ."
- "Many disabled people rely heavily upon grab bars and handrails to maintain balance and prevent serious falls. . . . The grab bar clearance . . . is a safety clearance to prevent injuries . . . ."
- "[E]mergency management plans with specific provisions . . . ensure the[] safe evacuation" of people with disabilities."
- "It is essential that emergency communication not be dependent on voice communications alone because the safety of people with hearing or speech impairments could be jeopardized."
- "[A] stable and regular surface is necessary for safe walking."

*Id.* at 4–5 (quoting 1991 Standards).

*Estate of Saylor*, 54 F. Supp. 3d 409, is the starting point for my analysis. Mr. Saylor, an individual with Down syndrome, attended a movie at Regal Cinemas ("Regal") and then stayed for a second viewing without purchasing a second ticket. *Id.* at 413. His caregiver, who attended the first showing with him, asked Regal to let Mr. Saylor remain in the theater until his

mother arrived, as he was refusing to leave and "sometimes displayed anger when he was frustrated and could be difficult to redirect from one activity to another." *Id*. at 413–14. Despite the request, Regal directed three police officers working as security guards to remove Mr. Saylor. *Id*. Mr. Saylor resisted, and in the struggle that ensued, the guards fractured his larynx, causing Mr. Saylor to suffocate to death. *Id*.

His parents, personally and on behalf of his estate, brought a multi-count complaint against various defendants, including negligence and gross negligence claims against Regal. *Id.* at 429. The plaintiffs claimed that,

> as a place of public accommodation, Regal was "required to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford their goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities" and that Regal's failure "to modify its policies, practices, and procedures to permit Mr. Saylor the time and assistance he required to leave the movie theater (or to have his aide or mother buy him another $12.00 ticket) without the intervention of law enforcement was negligent."

*Id.* at 429 (quoting Pls.' Compl. ¶¶ 35–36 in *Saylor*). In other words, the plaintiffs claimed that "the alleged breach of the statutory duty created by Title III constitutes prima facie evidence of common law negligence." *Id.* at 430.

This Court considered these claims on Regal's motion to dismiss, observing that "[w]hile cast in terms of state law claims, they [we]re clearly premised on an alleged violation of Title III of the ADA." *Id*. at 429. The Court concluded that "Title III cannot be used to support a negligence claim *in this context*." *Id.* (emphasis added). It reasoned that Maryland's appellate courts have found a statutory violation to be evidence of negligence only when the statute "relate[s] to public safety or health related issues," which Title III does not. *Id.* at 430. It also concluded that, even if a Title III violation could be evidence of negligence, "the actions of Regal were not a proximate cause of Mr. Saylor's death." *Id.* at 429.

7

This case differs significantly from *Saylor* because Bray relies on a violation of the ADA Standards, "not the more general anti-discrimination provisions of the statute itself," as evidence of negligence. *See id.* at 431. This Court limited the *Saylor* holding to the facts before it and did not foreclose the application of a "violation of public safety regulations promulgated under the ADA," such as the ADA Standards, as evidence of negligence. *See id.* at 429, 431. Indeed, the *Saylor* Court noted that the Sixth Circuit in *Smith v. Wal–Mart Stores, Inc.*, 167 F.3d 286 (6th Cir. 1999), and the D.C. Court of Appeals in *Theatre Management Group, Inc. v. Dalgliesh*, 765 A.2d 986 (D.C. 2001), "have recognized the viability of a negligence claim premised on a defendant's failure to comply with the certain 'Accessibility Guidelines' promulgated under the ADA (ADAAGs)." *Id.* at 430. Rather than disagreeing with these cases, the Court simply distinguished them, observing that, in *Smith* and *Dalgliesh*, "it was violation of public safety regulations promulgated under the ADA and not the more general anti-discrimination provisions of the statute itself that was admitted as evidence of negligence." *Id.* at 431.

*Smith*, 167 F.3d 286, and *Dalgliesh*, 765 A.2d 986, also are informative. *Smith* concerned a Wal–Mart patron who fell inside a Wal–Mart bathroom that "did not meet handicapped-accessible standards of ADA because the stall was not wide enough to accommodate Mrs. Smith's walker and permit her to turn around within the stall" and "there were no handrails ('grab bars') in the stall." 167 F.3d at 290. Mrs. Smith could not stop her fall because she had to leave her walker outside the stall, and the stall had no grab bars. *Id.* She sued Wal–Mart for the injuries she incurred, claiming negligence per se based on a violation of the ADA. *Id.* at 289. The court observed that "[t]he ADA Accessibility Guidelines for Buildings and Facilities, App. A to 28 C.F.R. § 36, § A4.26.1 provides: 'Many disabled people rely heavily on grab bars and handrails to maintain balance and prevent serious falls.'" *Id*. at 292. It

concluded that the plaintiff had "a private right of action against Wal–Mart under Georgia law for its failure to implement *any ADA-mandated requirements designed for the protection of persons such as herself*," and the district court should not have granted summary judgment in Wal–Mart's favor. *Id.* at 295 (emphasis added).

In *Dalgliesh*, the plaintiff, who used leg braces and a walker, requested assistance from an usher at a movie theater to navigate the ramp to his seat safely. 765 A.2d at 987. The usher did not honor his request that she walk next to him and provide support, and he fell on the ramp. *Id.* He filed suit in negligence against the theater, and the trial judge "allow[ed] the jury to consider, as evidence of the standard of care, the fact that under the Americans With Disabilities Act (ADA) *and related regulations* an interior ramp may not have a slope exceeding a [specific] ratio," as well as evidence that the slope of the ramp was steeper than permitted under the regulations. *Id.* at 987–99 (emphasis added). The jury found in Dalgliesh's favor, and the theater appealed, contending that it was error for the trial judge to admit "the ADA standard as evidence of the care required in the circumstances." *Id.* at 987.

The appellate court affirmed, reasoning that regardless whether D.C. law allowed for the admission of a statute without a public safety component as evidence of negligence (an issue it did not resolve), it was "evident . . . that the ADA—and *specifically the physical accessibility guidelines promulgated under it*—" had a "public safety objective," and therefore were admissible as evidence of negligence. *Id.* at 987, 990–91 (emphasis added). It explained:

> What seems to us to be the obvious relationship between the ADA's barrier removal requirement and the safety of a particular sub-portion of the public was well-stated by the trial judge in this case:
>> Obviously, if a handicapped person cannot safely use a facility or accommodation, access to the facility or accommodation is seriously compromised. This reality is closely akin to the actual denial of access, because if a person cannot safely use a building,

> then access to the building is significantly restricted. And restricted access can amount to discrimination.
>
> Since, as we conclude, *the ADA standard governing ramps embodies a public safety objective*, it satisfied any admissibility requirement of such purpose that can be gleaned from our decisions.

*Id.* at 991 (emphasis added).

Here, Bray claims that the ADA Standards require "roll-in showers . . . to be equipped with attached or secured shower chairs" that are "secured to the wall." Compl. ¶¶ 44, 45 (citing ADA Standards). According to Bray, "[t]he 1991 and 2010 Standards require that the shower seats be installed and secured to the wall so that shower seats do not slide out from under disabled individuals while transferring themselves to and from their wheelchairs in roll-in showers," which is "the type of accident that Mrs. Bray suffered" when Marriott violated that ADA Standards by "plac[ing] a non-ADA compliant, unsecured stand alone shower seat in the roll-in shower." *Id.* ¶¶ 47, 50, 51. Bray insists that the ADA Standards, including these specific standards regarding to bathing accommodations, have a public safety objective, noting that they repeatedly reference "safety" and require accommodations that "provide additional safety," "prevent injuries" and "serious falls," are "mounted securely" and do not "slip." Pl.'s Opp'n 4–5 (quoting 1991 Standards). I agree.

As noted, these allegations are unlike those in Saylor, which relied on the general anti-discrimination statute. Rather, they are like the facts in *Smith* and *Dalgliesh*, which involved violations of ADA Standards clearly designed to further the safety of people with disabilities. *See Dalgliesh*, 765 A.2d at 987–89; *Smith*, 167 F.3d at 289–90. I agree with the Sixth Circuit and the D.C. Court of Appeals that these ADA Standards have a safety aspect. *See Dalgliesh*, 765 A.2d at 991; *Smith*, 167 F.3d at 295. Why else require secure seating, like grab bars, if not to prevent people with disabilities from falling and sustaining physical injuries? To suggest

otherwise, as Marriott does, ignores the obvious safety purpose underlying the ADA Standards Bray pleaded in her Complaint.  Therefore, under the facts as pleaded by Bray, a violation of the ADA Standards referenced in her Complaint may be evidence of negligence.  *See Dalgliesh*, 765 A.2d at 991; *Smith*, 167 F.3d at 295.  By claiming physical injuries from Marriott's alleged violations of ADA Standards, Bray sufficiently alleges injuries of the type that "'the drafters intended the statute to prevent'" to survive a motion to dismiss.  *See Rivers*, 959 A.2d at 122 (quoting *Brown*, 744 A.2d at 55); *Chevron*, 2015 WL 6408191, at *10. Fairly considered, Bray's Complaint is one for common law negligence under well-established Maryland law.  It is not, as Marriott contends, an end run around the provisions of the ADA that foreclose money damages for violation of Title III of the ADA.

Accordingly, it is this <u>27th</u> day of <u>January</u>, <u>2016</u>, hereby ORDERED that Marriott's motion to dismiss, ECF No. 14, IS DENIED.  Marriott shall file an answer on or before February 17, 2016.

/S/
Paul W. Grimm
United States District Judge